**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    **Plaintiff,**<br><br>        v.<br><br>**OIL TANKER BEARING INTERNATIONAL MARITIME ORGANIZATION (IMO) NUMBER 9116512, A/K/A "ADRIAN DARYA 1," F/K/A "GRACE 1,"** *et al.***,**<br><br>    **Defendants.** | Civil Action No. 19-1989 (JEB) |

**MEMORANDUM OPINION**

The United States brought this forfeiture action *in rem* against three separate properties: (1) Oil Tanker Bearing International Maritime Organization Number 9116412 (Defendant Property 1); (2) All Petroleum Which Is or Was Onboard Said Oil Tanker (Defendant Property 2); and (3) $999,950.00 at U.S. Bank 1 Associated with Paradise Global Trading LLC (Defendant Property 3). The Government alleges that "the Defendant Properties are foreign assets or sources of influence for the [Islamic Revolutionary Guard Corps], a designated terrorist organization, which has engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5), and are therefore subject to seizure and forfeiture under 18 U.S.C. § 981(a)(1)(G)(i)." ECF No. 28-1 (Pl. Mot. for Default Judgment) at 15. As the only known potential claimants have withdrawn their claim, and no one else has claimed an interest or otherwise defended the action, the Clerk of Court entered a default on May 22, 2020. See ECF No. 27 (Clerk's Entry of Default). Plaintiff has now moved for default judgment pursuant to

1

Federal Rule of Civil Procedure 55(b)(2).  As the United States has sufficiently demonstrated that the allegations in its Complaint warrant such judgment, the Court will grant the Motion.

## I. Background

The IRGC "'is a non-traditional instrumentality of Iran' serving as 'the military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran.'"  Christie v. Islamic Republic of Iran, No. 19-1289, 2020 WL 3606273, at *3 (D.D.C. July 2, 2020) (quoting Blais v. Islamic Republic of Iran, 459 F. Supp. 2d 40, 47 (D.D.C. 2006)).  In 2007, the Department of State and the Department of the Treasury designated the IRGC pursuant to Executive Order No. 13382, see ECF No. 14 (Second Amended Complaint), ¶ 20, which authorizes relevant agencies to designate "any individual or entity as having engaged 'in activities or transactions that have materially contributed to, or pose a risk of materially contributing to, the proliferation of weapons of mass destruction or their means of delivery.'"  In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 and 50 U.S.C. § 1705, 381 F. Supp. 3d 37, 46 (D.D.C. 2019) (quoting Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters, Exec. Order 13382, 70 Fed. Reg. 38567 (July 1, 2005)).  Later in 2019, both the President and the Secretary of State designated the IRGC a Foreign Terrorist Organization.  See Pl. Mot. for DJ at 2.

The Government contends that petroleum serves as a major source of influence for the IRGC.  It allegedly "maintain[s] extensive economic interests in the oil industry[,] and the profits from these activities support . . . the proliferation of WMD and their means of delivery, support for terrorism, and a variety of human rights abuses."  Id. at 3.  Reflecting the IRGC's influence over this industry, the Department of Treasury's Office of Foreign Assets Control (OFAC), charged with administering and enforcing economic and trade sanctions, described the National

Iranian Oil Company (NIOC) as "an agent or affiliate of the IRGC."  Id.  OFAC concluded that in spring 2019 alone, one IRGC-led network employed more than a dozen vessels to transport nearly 10 million barrels of crude oil, which, taken collectively, sold for more than half a billion dollars.  Id. at 4.

In July 2019, Defendant Property 1, a large oil tanker capable of carrying approximately 290,000 metric tons of crude oil, and Defendant Property 2, approximately 2.1 million barrels of crude oil aboard, were detained by Gibraltarian authorities for sanctions violations, which led to intelligence revealing that the properties were destined for Port Banias, Syria.  Id. at 4, 6.  After the property was seized, the IRGC's Deputy Commander, as well as the head of the IRGC's navy, both publicly admitted that they belonged to the IRGC, and in August, OFAC identified them as "blocked properties[] because of their nexus to IRGC-[Qods Force]."  Id. at 6, 20.

The Government alleges that Defendant Properties were involved in a scheme "to support the IRGC's sanction-evading petroleum shipments to destinations including Syria, the profits of which support the IRGC's full range of nefarious activities."  Id. at 17.  Conspiring in the scheme was Iships Management, the manager of the tanker.  Id. at 4–5.  Iships was part of an assembly of companies named the Avantgarde Group.  Id. at 5.  That entity received payments from Mohammad Saeed Al Aqili and the Al Aqili Group, both designated by OFAC in 2014 for assisting the Iranian regime in selling oil in evasion of U.S. trade and economic sanctions.  Id.  OFAC noted in the designation that the Al Aqili Group arranged oil sales for the IRGC and that Iships was affiliated with the NIOC.  Id.  In addition, a Brigadier General in the IRGC, who was also acting as the Minister of Petroleum, facilitated payments involving the Defendant Properties.  Id.

The Government further contends that the Al Aqili and Avantgarde Group used Paradise Global, a U.A.E.-based front company, as a payment intermediary to launder money as part of the above-described scheme. Id. at 6–7. For support, it points to the fact that Paradise Global is partially owned by a member of the Al Aqili Group, as well as to several instances of Paradise Global's coordinating payments with other Avantgarde Group companies, including for the tanker. Id. at 7. Two such instances occurred in February 2015, when an Oman-based front company wired $699,975 to Paradise Global, plus an additional $299,975 the following day. Id. at 7. OFAC blocked these funds while they transited through a U.S. correspondent bank account. Id. Together they compose Defendant Property 3. Id.

In light of these allegations, the Government now seeks forfeiture of Defendant Properties and moves for default judgment.

## II.    Legal Standard

"The determination of whether a default judgment is appropriate is 'committed to the sound discretion of the trial court.'" Lu v. Lezell, No. 11-1815, 2013 WL 12183952, at *1 (D.D.C. July 19, 2013) (quoting Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980)). A court may enter default judgment when the "party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). "This form of relief is no less appropriate when the defendant in question is property," and "unless a claimant properly intervenes to raise defenses to its forfeiture, the defendant property is deemed to have 'failed to plead or otherwise defend' against the allegations, and the Clerk of Court must enter default." United States v. All Assets, 330 F. Supp. 3d 150, 156 (D.D.C. 2018) (quoting Fed. R. Civ. P. 55(a)).

Once default is entered, the defendant "is deemed to admit every well-pleaded allegation in the complaint." Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); see Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973); see also 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.) (defaulting "defendant has no further standing to contest the factual allegations of plaintiff's claim for relief"). Nevertheless, "[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson, 636 F.2d at 835, and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." Gutierrez v. Berg Contracting, Inc., No. 19-3044, 2000 WL 331721, at *2 (D.D.C. Mar. 20, 2000); see also United States v. $1,0171,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., No. 17-1166, 2018 WL 3949962, at *3 (D.D.C. June 29, 2018) ("the defendant['s] default notwithstanding, the plaintiff is entitled to a default judgement only if the complaint states a claim for relief") (alteration in original) (quoting Jackson v. Corr. Corp. of Am., 564 F. Supp. 2d 22, 26–27 (D.D.C. 2008)).

**III. Analysis**

Before looking at the allegations in the Complaint, the Court examines its jurisdiction and the sufficiency of notice to potential claimants.

    A.    Jurisdiction

As a threshold matter, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1355(a), which provides that district courts "have original jurisdiction . . . of any action or proceeding for . . . forfeiture, pecuniary or otherwise, incurred under any Act of Congress." It

also has jurisdiction under 28 U.S.C. § 1345, which provides the district courts with jurisdiction over proceedings commenced by the United States.

This Court, furthermore, does not need constructive or actual possession in order to have *in rem* jurisdiction over Defendant Property 1 and Defendant Property 2, which are located overseas. See United States v. All Funds In Acct. in Banco Espanol de Credito, 295 F.3d 23, 27 (D.C. Cir. 2002) ("Congress intended the District Court for the District of Columbia . . . to have jurisdiction to order the forfeiture of property located in foreign countries"); see also United States v. Approximately $1.67 Million In Cash, 513 F.3d 991, 998 (9th Cir. 2008) ("We find ourselves in agreement with the analysis of the D.C. and Third Circuits[] . . . that Congress intended § 1355 to lodge jurisdiction in the district courts without reference to constructive or actual control of the res."). This Court thus has *in rem* jurisdiction to issue a forfeiture order, and this holds true regardless of "[w]hether or not [the] foreign government will ultimately choose to comply." United States v. One Gulfstream G-V Jet Aircraft, 941 F. Supp. 2d 1, 7 (D.D.C 2013); see also United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 772 F. Supp. 2d 205, 211 (D.D.C. 2011).

    B.    Notice

A forfeiture action *in rem* arising from a federal statute is governed by Supplemental Rule G of the Federal Rules of Civil Procedure. Rule G(4)(a)(i) states that "[a] judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders." The Government fulfilled this obligation by posting timely notice on an official government forfeiture website, www.forfeiture.gov, for at least 30 consecutive days, as required by Supplemental Rule G(4)(a)(iv)(C). See Pl. Mot. for DJ at 8.

Plaintiff was also required to provide direct notice "to any person who reasonably appear[ed] to be a potential claimant on the facts known to [it]" and to send such notice "by means reasonably calculated to reach the potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(i), (iii)(A).  In regard to Defendant Properties 1 and 2, direct notice was not sent, "as the potential claimant was an Iranian government entity," and "[d]irect notice via mail was impossible."  Pl. Mot. for DJ at 14.  Nevertheless, the "Iranian government had actual notice and commented in the press about the instant complaint."  Id.; see also Associated Press, Iranian Tanker Sought by U.S. Heading Toward Greece, The Baltimore Sun (Aug. 19, 2019), https://www.baltimoresun.com/gibraltar-rejects-us-pressure-hold-iranian-oil-tanker-story.html ("The Iranian spokesman warned Monday against any order by the U.S. Justice Department to have the renamed ship seized again.").  "A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice."  Fed. R. Civ. P. Supp. R. G(4)(b)(v).

As to Defendant Property 3, the Government contends that no person reasonably appeared to be a potential claimant, and direct notice was thus not required.  See Pl. Mot. for DJ at 14.  OFAC blocked these funds as they transited accounts, and a correspondent bank branch located in New York froze them.  Id. at 7, 14.  Because a claimant's interest is "defined by the law of the State in which the interest arose," United States v. Sum of Three Hundred Nine Million Five Hundred Thousand Dollars, 85 F. Supp. 3d 111, 116 (D.D.C. 2015) (quoting United States v. One Lincoln Navigator, 328 F.3d 1011, 1013 (8th Circ. 2003)), the Court applies New York law.  Under Article 4 of the New York Uniform Commercial Code, which governs transactions such as these, Levin v. JPMorgan Chase Bank, N.A., 751 F. App'x 143, 147 (2d Circ. 2018), the blocked asset — here, the funds — "is considered the 'sole property' of the

correspondent bank." Id. at 149 (quoting Levin v. Bank of New York Mellon, No. 09-5900, 2017 WL 4863094, at *4 (S.D.N.Y. Oct. 27, 2017). In other words, blocked funds in the possession of a correspondent bank are "neither the property of the originator nor the beneficiary." Id. at 147 (quoting Shipping Corp. of India Ltd. V. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 71 (2d Cir. 2009)). Therefore, neither Paradise Global (beneficiary) nor the Oman-based front company (originator) had a cognizable interest in the property, and they were not potential claimants warranting direct notice. As the intermediary bank that froze the funds expressed no interest in contesting the forfeiture, see Pl. Mot. for DJ at 14, the Court is satisfied that the Government complied with relevant notice requirements. With procedural requirements met, it may cruise ahead to the substance of Plaintiff's claims.

    C.    Merits

Supplemental Rule G also requires that the Complaint "identify the statute under which the forfeiture action is brought" and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(e)–(f). The Court checks first to see whether this forfeiture action adequately "aris[es] from a federal statute" — here identified by Plaintiff as 18 U.S.C. § 981. See Fed. R. Civ. P. Supp. R. G(1). It next determines whether the Government has stated sufficient facts.

    1.    *Federal Statute*

Plaintiff brings this action under the Civil Forfeiture section of Title 18, Crimes and Criminal Procedure. Specifically, it claims that Defendant Properties are subject to forfeiture under 18 U.S.C. § 981(a)(1)(G)(i), which covers two categories of property relating to "any individual, entity, or organization engaged in planning or perpetrating any . . . Federal crime of terrorism . . . against the United States, citizens or residents of the United States, or their

property": (1) "[a]ll assets, foreign or domestic" of such individual, entity, or organization; and (2) "all assets, foreign or domestic, affording any person a source of influence over any such entity or organization." Defendant Properties 1 and 2 are subject to forfeiture under the first prong, while Defendant Property 3 concerns the second.

As a threshold matter, Plaintiff must establish that the IRGC is subject to this provision. The Government posits that because the Secretary of State designated the IRGC as a Foreign Terrorist Organization, it is covered by this provision "as such individual, entity, or organization is necessarily engaged in planning or perpetrating a federal crime of terrorism." Pl. Mot. for DJ at 18–19; see also 18 U.S.C. § 981(a)(1)(G)(i); 8 U.S.C. § 1189(a)(1)(B) (requiring Secretary to find that "organization engages in terrorist activity, or retains capability and intent to engage in terrorist activity or terrorism," to designate it as foreign terrorist organization) (internal citation omitted). It further argues that "OFAC, which has 'unique expertise in matters of terrorist finance,' has tied the financing of terrorism on numerous occasion[s] to petroleum sales by the IRGC." Pl. Mot. for DJ at 19 (quoting United States v. Puerta, 249 F. App'x 359, 360 (5th Cir. 2007)). The Court agrees that, at least in this instance, it is appropriate to defer to the Secretary of State's and OFAC's findings that IRGC is engaged in terrorist activity and is thus subject to 18 U.S.C. § 981(a)(1)(G)(i). There is no question, furthermore, that Defendant Properties 1 and 2 belong to the IRGC. Indeed, its representatives have publicly admitted as much, and OFAC identified these properties as "blocked . . . because of their nexus to IRGC-QF." Pl. Mot. for DJ at 20. As foreign assets of the IRGC, they are subject to forfeiture under the first prong of 18 U.S.C. § 981(a)(1)(G)(i).

As to Defendant Property 3, the water is murkier. The Government asserts that this property is subject to forfeiture because it is an asset that affords Paradise Global "a source of

9

influence over" the IRGC. See Mot. for DJ at 20; see also 18 U.S.C. § 981(a)(1)(G)(i). As the Government points out, there is little caselaw defining "source of influence" within this context, and the Court fortunately need not determine its contours here. It does, however, find persuasive Plaintiff's reasoning by analogy to the RICO forfeiture statute, which uses similar "source of influence over" language. See 18 U.S.C. § 1963(a)(2)(D). In RICO-based forfeitures, courts look to whether the property was "used to further the affairs of the enterprise" or "made the prohibited conduct less difficult." United States v. Neff, 303 F. Supp. 3d 342, 349 (E.D. Pa. 2018). Paradise Global's role as a front company for the individuals involved in this scheme provided a "façade of legitimacy" that helped to conceal the alleged scheme to sell Iranian petroleum. United States v. Gjeli, No. 13-421, 2019 WL 8373425, at *7 (finding "façade of legitimacy" served as source of influence in RICO context) (citing United States v. Seher, 562 F.3d 1344, 1369 (11th Cir. 2009)). It allowed co-conspirators to make surreptitious payments and thus provided a way to move money without detection. See Pl. Mot. for DJ at 21. As money laundered through Paradise Global was likely used to further the affairs of the enterprise and to make the IRGC's prohibited conduct less difficult, the Court finds that the Government properly brought this action for forfeiture against Defendant Property 3 as an asset that provided a source of influence by Paradise Global over the IRGC under 18 U.S.C. § 981(a)(1)(G)(i).

        2.    *Reasonable Belief*

The next question is whether the Complaint alleges facts sufficient to support "a reasonable belief that the Government could prove by a preponderance of the evidence that these [properties] were subject to civil *in rem* forfeiture, as required by Fed. R. Civ. P. Supp. R. G(2)(f)." United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., 324 F. Supp. 3d 38, 41 (D.D.C. 2018). First, Plaintiff argues that it has met its burden by

specifying the perpetrators, victims, and goal of the scheme, as well as the means for effectuating it, and which members were responsible for which acts. See Pl. Mot. for DJ at 16–17. Specifically, the Government provides:

- [T]he perpetrators of the scheme were Iships Management Pte Ltd ("Iships"), a front company which was the manager of Defendant Property 1. Iships was part of the Avantgarde Group, which was associated with Mohammad Saeed Al Aqili and the Al Aqili Group. OFAC noted in its designation how Mohammad Saeed Al Aqili and the Al Aqili Group arranged oil sales for the IRGC. The Al Aquili Group used front companies like Paradise Global to launder related payments. Iships was also directly affiliated with NIOC, *see e.g.,* Complaint (ECF 14) at ¶¶ 26-30, 48;

- the victims of the scheme were the United States, citizens or residents of the United States, or their property, *see Id.* at ¶ 81;

- the goal of the scheme was to support the IRGC's sanction-evading petroleum shipments to destinations including Syria, the profits of which support the IRGC's full range of nefarious activities, including the proliferation of WMD and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad, *see* ¶¶ 80, 22;

- the means of effectuating the goals were by concealing the Iranian-origin of the petroleum by engaging in ship-to-ship transfers and fabricating shipping documents, *see e.g.,* ¶¶ 36 - 44; and

- regarding which members of the conspiracy were responsible for which acts: the IRGC and NIOC arranged the shipments; and private third-party companies including the Avantgarde Group companies, Iships, and Paradise Global, managed the vessels and paid for shipments, *see e.g.,* ¶¶ 26-30, 48.

Id. at 17. The Court agrees that these allegations are sufficient to support the Government's claim. See United States v. All Assets, 83 F. Supp. 3d 360, 374–75 (D.D.C. 2015) (listing these elements as sufficient to support forfeiture claim).

Plaintiff puts forth two additional grounds to find in its favor. First, "OFAC [has] identified Defendant Property 1 and Defendant Property 2 as blocked property, and previously issued a blocking order as to Defendant Property 3." Pl. Mot. for DJ at 15. These determinations are entitled to deference, see In re 650 Fifth Ave., No. 8-10934, 2013 WL

11

2451067, at *6 (S.D.N.Y. June 6, 2013) ("Given OFAC's unique expertise in matters of terrorist finance and the sensitive nature of the investigations upon which OFAC makes its determinations, it is entitled to deference even greater than that afforded an administrative agency statutory interpretation under Chevron."); see also Consarc Corp. v. Iraqi Ministry, 27 F. 3d 695, 702 (D.C. Cir. 1994), and establish a reasonable belief that the property is subject to forfeiture. See Pl. Mot. for DJ at 16.

Second, this Court previously found by probable cause that the Defendant Properties were subject to forfeiture. See ECF No. 16 (Notice of Issuance of Arrest Warrant). Plaintiff sensibly contends that because this finding relied on the same facts as alleged in the Complaint and affidavit in support of the warrant for arrest, this Court should find the same here, particularly given the comparable standard. See Pl. Mot. for DJ at 16; see also ECF No. 15 (Pl. Mot. for Issuance of Warrant of Arrest), ¶ 3 (articulating probable-cause standard as "the government 'must have reasonable grounds to believe that the certain property is subject to forfeiture.") (quoting United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir. 1986)).

With multiple justifications to lean on, the Court finds that Plaintiff has met its burden.

**IV.    Conclusion**

For the foregoing reasons, the Court will grant the Government's Motion for Default Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  August 7, 2020